Filed 12/1/22  Marriage of de Freitas and Leite CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re the Marriage of NALTY DE FREITAS, JR., and MONIQUE CORRE LEITE. | |
| NALTY DE FREITAS, JR. Appellant, v. MONIQUE CORRE LEITE, Respondent. | G060495 (Super. Ct. No. 17D009958) O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Salvador Sarmiento, Judge.  Affirmed.

Nalty de Freitas, Jr., in pro. per.; and Grace White, for Appellant.

Orrick, Herrington & Sutcliffe, Khai LeQuang and Janista Lee; Community Legal Aid SoCal, Terra Castillo Laughton and Sarah Reisman, for Respondent.

\*       \*       \*

Nalty de Freitas, Jr. (Nalty) appeals from a consolidated domestic violence and dissolution proceeding.[1] On appeal, he challenges two aspects of the court's order issued after trial. First, he argues the court erred by excluding the testimony of three witnesses. Second, he claims the court incorrectly found the temporary spousal support order in favor of his former wife, Monique Corre Leite (Monique), continued until trial. According to Nalty, the temporary spousal support order terminated at an earlier date. He also suggests the order was not supported by the evidence.

We disagree with Nalty's contentions and affirm the order. The court did not abuse its discretion by excluding the testimony of an expert witness who was never disclosed on Nalty's witness list. The testimony of two other relatives also was not relevant to the action. With respect to the temporary spousal support order, Nalty forfeited his argument that the order was unsupported by the evidence because he never appealed from the order or raised his argument in the trial court. The court also correctly found the order remained in effect until trial because Nalty never requested the court terminate or modify temporary spousal support.

FACTS[2]

Nalty and Monique married in 2008 and had one son. On December 5, 2017, Monique filed a request for a domestic violence restraining order along with an

_____

[1] We refer to the parties by their first names for ease of reading, and not out of disrespect.

[2] Nalty references purported facts without any citations to the record as required by California Rules of Court, rule 8.204(a)(1)(C). "It is not the task of this court to search the record for evidence that supports the statements in an appellate brief; it is the responsibility of [the parties] to cite this court to the record evidence." (*In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1310, fn. 3.) While we could consider the issues forfeited, we consider them on the merits and have identified relevant facts in the record.

2

income and expense declaration. A few days later, Nalty filed a petition for dissolution of marriage, which was consolidated with Monique's domestic violence case. Nalty later filed an income and expense declaration.

At the December 27, 2017 hearing on Monique's request for a restraining order, Nalty requested a continuance because his counsel was unavailable due to a surgery. Nalty also requested visitation with his son. The court continued the hearing to April 2018 and modified prior temporary orders to allow Nalty to have supervised visits with his son. The court's minute order further ordered Nalty "to give [Monique] $1000.00 per month commencing 12/27/2017 for support pending the future hearing."[3]

In April 2018, the court issued a five-year restraining order against Nalty and gave sole legal and physical custody of their son to Monique. The court also ordered Nalty to enroll in a 52-week batterer's intervention program.

In May 2021, the court held a trial on the petition for dissolution of marriage. Nalty and Monique were the only witnesses who testified at trial. After hearing the evidence, the court tentatively decided to terminate spousal support effective that day. The court explained: "[B]ecause this is a short-term marriage, he has not been paying support, I do not have, I believe, sufficient evidence to show he has the ability to pay. I think she clearly has a need; the problem is ability to pay. I do not believe I have sufficient information or evidence to make a finding he has the ability [to pay]." Nalty's counsel disagreed, arguing the December 2017 spousal support order previously terminated at the April 2018 hearing. He reasoned the spousal support order required support "pending the future hearing," which was the April 2018 hearing when "there was no order for support." In response, Monique's counsel argued spousal support did not terminate prior to trial because there was never an order vacating spousal support.

---

[3] The matter had been assigned to Judge Salvador Sarmiento for all purposes, but the December 2017 hearing took place before Judge Andre De La Cruz.

The court ultimately agreed with Monique, found spousal support would terminate on June 1, 2021, and ordered Nalty to pay spousal support arrears for a total of $48,981.

## DISCUSSION[4]

*The Court Did Not Err by Excluding the Testimony of Three Witnesses*

### A. Relevant Background

Before trial, Nalty indicated he was seeking an order for reunification therapy with Jessica St. Clair, a reunification therapist, to facilitate reunification with his son. When Nalty's counsel later attempted to call St. Clair as an expert witness, Monique's counsel objected due to "lack of proper notice" and "no declaration." Nalty's counsel explained his other expert witness was unavailable and suggested he provided notice of St. Clair to Monique's counsel either that same day or the night before. He also conceded St. Clair was not included on the witness list. The court did not allow St. Clair to testify and explained: "Since you didn't advise the other side, I will not let her testify."

After Monique's direct examination, Nalty's counsel attempted to call two other witnesses—Nalty's sister and the son's grandmother.[5] He noted they spoke

---

[4] Monique argues we should not reach the merits of the appeal because Nalty prematurely appealed from the court's May 20, 2021 minute order, which directs Monique to prepare a formal judgment. We disagree and elect to treat the notice of appeal as if it was "filed immediately after entry of judgment." (Cal. Rules of Court, rule 8.104(d)(2) ["The reviewing court may treat a notice of appeal filed after the superior court has announced its intended ruling, but before it has rendered judgment, as filed immediately after entry of judgment"].)

[5] It is unclear whether the paternal or maternal grandmother is at issue. Monique states Nalty tried to call his own mother as a witness, but the reporter's transcript references the "maternal grandmother." The opening and reply briefs do not add any clarity to the issue because they reference both the paternal and maternal

Portuguese and that he requested a translator about three days earlier, but the clerk indicated the court had not received the request. Monique's counsel also objected to allowing their testimony, but the court stated Nalty was entitled to present rebuttal evidence. After the court informed the parties they would have to provide their own Portuguese translators, Nalty's counsel confirmed he had a translator available. The court then directed Nalty's counsel to continue with his cross-examination of Monique.

During cross-examination, Nalty's counsel asked Monique if her son had a relationship with the paternal grandmother in 2017. The court questioned why this was relevant and suggested it was outside the scope of direct examination. In response, Nalty's counsel stated it would show "there was a warm relationship between paternal grandmother and the son . . . ." The court again questioned why this was relevant and indicated it could not order any visitation with the grandmother. Nalty's counsel then responded, "It would show that [Monique] is not thinking about the best interest of her child in cutting off relations with paternal grandmother." The court stated that was not at issue, and Nalty's counsel continued with a different line of questioning.

After Monique's testimony, Nalty's counsel attempted to call the grandmother and sister as rebuttal witnesses. The court questioned if the grandmother would testify about her custodial time with the grandson. Nalty's counsel responded: "Yes." When asked if the grandmother would testify about anything else, Nalty's counsel responded: "No." He also stated the sister "would testify as to the same." The court concluded: "Since that is not an issue in terms of relationship with them and their custodial times, it's not necessary for them to testify."

grandmother.

B. Analysis

Nalty argues the court erred by excluding the testimony of St. Clair and the two relatives. We disagree.

It is well established that courts have inherent power "'"to exercise reasonable control over all proceedings connected with pending litigation . . . in order to ensure the orderly administration of justice."'" (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1351.) "'The state's strong interest in prompt and efficient trials permits the nonarbitrary exclusion of evidence [citation] . . . .'" (*Guardianship of A.H.* (2022) 83 Cal.App.5th 155, 159) Likewise, "an exchange of witness lists is conducive to orderly procedure. It promotes a fair trial by enabling the parties and counsel to prepare for trial and by preventing surprise. For the requirement to have teeth, there must be some sanctions if it is violated. Those sanctions may include the exclusion of evidence, unless that would '"prevent *a full and fair opportunity* . . . to present all competent, relevant, and material evidence . . . ."'" (*Id*. at p. 160.)

A trial court's decision to exclude evidence is reviewed for an abuse of discretion. (*Litinsky v. Kaplan* (2019) 40 Cal.App.5th 970, 988.) Under the abuse of discretion standard, a "'"decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.'"' [Citations.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) If error is found, it "is grounds for reversing a judgment only if the party appealing demonstrates a 'miscarriage of justice'—that is, that a different result would have been probable if the error had not occurred." (*Zhou v. Unisource Worldwide* (2007) 157 Cal.App.4th 1471, 1480.)

6

With these principles in mind, the court did not abuse its discretion by excluding St. Clair's testimony. In October 2020, the court ordered the parties to exchange a witness list 10 days before trial. Nalty concedes St. Clair was not identified on his witness list. Indeed, Nalty did not disclose St. Clair as an expert witness until the eve of trial because his original expert witness was unavailable. Nalty also does not suggest he sought to promptly augment his witness list or that there would be no prejudice to Monique. (Code Civ. Proc., § 2034.620 [describing when a court can grant leave to augment or amend an expert witness list].) Given these facts, we cannot conclude that no reasonable judge would have excluded the testimony of an unidentified expert witness. *(Reales Investment, LLC v. Johnson* (2020) 55 Cal.App.5th 463, 472; *Castaline v. City of Los Angeles* (1975) 47 Cal.App.3d 580, 591.)

The court also did not abuse its discretion by excluding the testimony of Nalty's sister or the grandmother. "No evidence is admissible except relevant evidence." (Evid. Code, § 350.) "'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) Trial courts have broad discretion to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) A ruling excluding evidence pursuant to Evidence Code section 352 is reviewed for an abuse of discretion. (*People v. Cole* (2004) 33 Cal.4th 1158, 1195.)

Here, the proffered testimony of the two relatives was not relevant to the action. At trial, Nalty's counsel conceded the two witnesses would only testify about their custodial time with the parties' son. But the question before the court was whether it should order reunification with Nalty, not whether there should be custodial time with

Nalty's relatives. In other words, the relatives' relationship with the child had no probative weight as to Nalty's relationship with his son.

Nalty raises a host of unsupported arguments. First, he suggests the court excluded the relatives' testimony because the court "would not provide a Portuguese interpreter." Not true. While the court initially indicated it could not provide a Portuguese translator, the court did not prohibit Nalty from providing his own translator. In any event, the court excluded the relatives' testimony on relevance grounds, not for any other reason. Second, Nalty claims the court excluded the relatives' testimony because of a sanctions order. But the sanctions concerned a different issue. The court appears to have imposed evidentiary sanctions precluding Nalty from presenting evidence of his financial situation because he failed to file a preliminary declaration of disclosure. Those sanctions have nothing to do with the court's decision to exclude the relatives' testimony. Third, Nalty argues the excluded witnesses "were going to offer the best evidence as to the relationship of Father with the child . . . ." This differs from Nalty's representation to the trial court below. The court correctly found the testimony was irrelevant given Nalty's representation that they would testify about their own time with the son. Finally, Nalty contends the "court never made a finding that [the witnesses] were not rebuttal witnesses or impeachment witnesses." The court was not required to make any such finding because the court excluded the witnesses' testimony for lack of notice or lack of relevance.

For the foregoing reasons, the court did not err by excluding the testimony of the three witnesses.

*The Court Did Not Err by Finding Temporary Spousal Support Continued Until Trial*

Nalty next challenges two aspects of the temporary spousal support order. First, he claims the order awarding temporary spousal support was unsupported by the evidence. Second, he argues temporary spousal support should not have continued until trial. Instead, he claims temporary spousal support terminated in April 2018 when the court held a hearing on Monique's request for a restraining order. We reject both contentions.

Generally, "a court may order temporary spousal support in 'any amount' during the pendency of a dissolution proceeding, based on the moving party's need and the other party's ability to pay. (*In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, 103; see Fam. Code, § 3600.) As relevant here, "[a] temporary support order is operative from the time of pronouncement, and it is directly appealable." (*In re Marriage of Gruen* (2011) 191 Cal.App.4th 627, 637.) We review temporary spousal support orders under the abuse of discretion standard. (*In re Marriage of Winter* (1992) 7 Cal.App.4th 1926, 1932.)

Here, the court ordered $1,000 per month in temporary spousal support in December 2017, and the order was appealable. While Nalty contends the order was unsupported by the evidence, he never appealed from the temporary spousal support order. There also is no indication Nalty challenged the amount of spousal support in the trial court. He therefore forfeited his right to challenge the order. (*In re Marriage of Gruen*, *supra*, 191 Cal.App.4th at p. 638 ["'If an order is appealable, . . . and no timely appeal is taken therefrom, the issues determined by the order are res judicata'"] *In re Marriage of Weiss* (1996) 42 Cal.App.4th 106, 119.) We also note the premise of Nalty's argument is unfounded. He claims the temporary spousal support order was unsupported by the evidence because the parties had not filed an income and expense declaration. To

9

the contrary, the trial court's docket indicates both Nalty and Monique filed income and expense declarations before the December 2017 order.[6]

As to termination of temporary spousal support, Nalty argues the *pendente lite* order terminated at the April 2018 hearing on Monique's request for a restraining order. He appears to rely on a portion of the December 2017 order requiring spousal support "pending the future hearing." According to Nalty, the "future hearing came [in April 2018] and the order for support was not renewed or addressed." But, as Monique correctly notes, *pendente lite* orders do not automatically terminate. Instead, "[t]he purpose of pendente lite spousal support is to maintain the parties' standards of living in as close as possible to the preseparation status quo, *pending trial*." (*In re Marriage of Ciprari*, *supra*, 32 Cal.App.5th at p. 103, italics added.) However, a temporary spousal support award may be modified or terminated upon notice of motion or order to show cause. (Fam. Code, § 3603.) In fact, most courts will not revise temporary spousal support unless there has been a material change of circumstances. (*In re Marriage of Freitas* (2012) 209 Cal.App.4th 1059, 1068-1069; *In re Marriage of Gruen*, *supra*, 191 Cal.App.4th at p. 638.) In the instant case, Nalty never requested the court terminate the temporary spousal support order before trial or showed a change of circumstances. The court accordingly did not err by finding temporary spousal support remained in effect until trial.

---

[6] Nalty also suggests the temporary spousal support award is invalid because it was contained in a minute order rather than the temporary restraining order or domestic violence restraining order. Once again, Nalty has forfeited this argument by failing to raise it below. Regardless, Nalty cites no authority, and we are aware of none, indicating a temporary spousal support cannot be included in a minute order. This is particularly true where, as here, the minute order did not direct either party to prepare an order after the hearing.

10

DISPOSITION


The order is affirmed.  Monique is entitled to costs incurred on appeal.



SANCHEZ, J.

WE CONCUR:


GOETHALS, ACTING P. J.


MARKS, J.*

*Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11